UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEN WALTERS, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>JERRY DEAN FREY, individually and doing business as J.D. FREY EXCAVATING,<br><br>    Defendant.<br>_____/ | No. C-05-0035 PJH (EMC)<br><br>**REPORT AND RECOMMENDATION RE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**<br>**(Docket No. 16)** |

    Plaintiffs filed suit against Defendant Jerry Frey, individually and doing business as J.D. Frey Excavating, pursuant to the Employee Retirement Income Security Act ("ERISA") and the Labor Management Relations Act ("LMRA"). After Mr. Frey failed to respond to the complaint, default was entered against him, and Plaintiffs moved for default judgment. Judge Hamilton has referred the motion to the undersigned for a report and recommendation. Having considered Plaintiffs' briefs and accompanying submissions, the Court deems the matter suitable for decision on the papers and hereby recommends that Plaintiffs' motion for default judgment be GRANTED.

### I.    FACTUAL & PROCEDURAL BACKGROUND

    Plaintiffs filed suit against Mr. Frey on January 3, 2005. *See* Docket No. 1 (complaint, filed on 1/3/05). The complaint contains the following allegations:

    Plaintiffs are trustees, fiduciaries, and administrators of several trust funds, which are employee benefit plans under ERISA, and J.D. Frey Excavating is an employer within the meaning of ERISA. *See* Compl. §§ IV-V. J.D. Frey Excavating entered into a collective bargaining

agreement with a union, pursuant to which it promised to make contributions to the trust funds for each hour of work performed by or paid to its employees covered by the agreement. *See id.* §§ VII-VIII. J.D. Frey Excavating, however, failed to make contributions as required. *See id.* § IX.

Mr. Frey was personally served with the summons and complaint on January 14, 2005. *See* Docket No. 7 (summons, filed on 1/24/05). When no response was received, Plaintiffs sought entry of default. *See* Docket No. 9 (motion for entry of default, filed on 5/3/05). Default was entered on May 5, 2005. *See* Docket No. 11 (entry of default, filed on 5/5/05).

## II.  DISCUSSION

A.  Service of Process

In deciding whether to grant or deny a default judgment, a court must first "assess the adequacy of the service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). According to the complaint, Mr. Frey is an individual doing business as J.D. Frey Excavating. Under Federal Rule of Civil Procedure 4, "service upon an individual . . . may be effected in any judicial district of the United States . . . by delivering a copy of the summons and of the complaint to the individual personally." Fed. R. Civ. P. 4(e)(2). As noted above, Mr. Frey was personally served with the summons and complaint on January 14, 2005. *See* Docket No. 7 (summons, filed on 1/24/05). Therefore, service of process was adequate in the instant case.

B.  Merits of Motion for Default Judgment

After entry of a default, a court may grant a default judgment on the merits of the case. *See* Fed. R. Civ. P. 55. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). F actors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

The majority of the above factors weigh in favor of default judgment. For example, if the motion for default judgment were to be denied, then Plaintiffs would likely be left without a remedy. *See Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiffs' motion [for default judgment] would leave them without a remedy. Prejudice is also likely in light of the merits of their claim."); *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Also, the sum of money at stake in the action is appropriate -- tailored to the specific misconduct of J.D. Frey Excavating. *See id.* at 1176 (stating that "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct"). Finally, because J.D. Frey Excavating has not filed an answer to Plaintiffs' complaint, there is little to suggest that there is a possibility of a dispute concerning material facts, and it is unlikely that J.D. Frey Excavating's default was due to excusable neglect, especially when Plaintiffs served not only the summons and complaint but also the request for entry of default and motion for default judgment on J.D. Frey Excavating but still received no response.

The only factors that deserve closer analysis are the second and third factors. The evidence submitted by Plaintiffs shows that the trust funds at issue are covered by ERISA and that Mr. Frey/J.D. Excavating is an employer within the meaning of ERISA. *See* McBride Decl. ¶¶ 2, 6. The evidence also shows that Mr. Frey/J.D. Frey Excavating entered into an Independent Northern California Construction Agreement with the union, effective September 23, 1999, *see* Supp. McBride Decl., Ex. A (construction agreement), and that this agreement incorporated the current and future Master Agreements between the union and the Associated General Contractors of California, Inc. *See* 2d Supp. McBride Decl., Ex. A (Master Agreement). The Master Agreement for 1998-2002 provided that employers would make certain contributions to the trust funds and would be "bound by all the terms and conditions of each Trust Agreement." *Id.* at 118 (Master Agreement); *see also* McBride Decl., Ex. C (representative trust agreement). The union and Mr. Frey/J.D. Frey Excavating also entered into two project agreements which modified the amount of contributions

1  payable to the trust funds for a particular project.  *See id.* ¶ 2; *see also* McBride Decl., Ex. A (project
2  agreements).
3        Under the Master Agreement, an employer's contribution would be due "on or before the
4  15th day of the month following the month in which such Employee was employed by such
5  Individual Employer, and an Individual Employer shall be delinquent if such Individual Employer's
6  Report and payment is not received by the bank before midnight of the 25th day of that month."  2d
7  Supp. McBride Decl., Ex. A at 115 (Master Agreement)  The complaint alleges -- and the Court
8  must accept as true, *see Televideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917 (9th Cir.1987) (stating
9  that, upon entry of default, all well-pleaded facts in the complaint are taken as true, except those
10 relating to damages") -- that Mr. Frey/J.D. Frey Excavating failed to make contributions to the trust
11 funds as required by the various agreements.  *See* Compl. § IX.  Thus, Plaintiffs have successfully
12 stated a claim for relief under ERISA.  *See* 29 U.S.C. § 1145 (providing that "every employer who is
13 obligated to make contributions to a multiemployer plan under the terms of the plan or under the
14 terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make
15 such contributions in accordance with the terms and conditions of such plan or such agreement"); *id.*
16 § 1132(a)(3) (authorizing, *inter alia*, a fiduciary to bring a civil action to enforce an employer's §
17 1145 obligation).
18       Accordingly, the Court recommends that, based on the *Eitel* factors, default judgment in the
19 instant case be granted.
20 C.   <u>Damages</u>
21       Because default judgment is warranted, the Court must determine what damages are
22 appropriate.  Under 29 U.S.C. § 1132(g)(2), a court shall award a fiduciary who prevails in a § 1145
23 claim (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to
24 the greater of the interest on the unpaid contributions or liquidated damages as specified in the plan
25 (generally not to exceed 20 percent of the unpaid contributions), (D) reasonable attorney's fees and
26 costs, and (E) other appropriate legal or equitable relief.  *See* 29 U.S.C. § 1132(g)(2).  In their
27 motion for default judgment, Plaintiffs ask for (1) unpaid contributions for two employees of J.D.
28 Frey Excavating, Matthew J. Trueb and Craig E. Smith, who performed work during the months of

4

December 2000 and January 2001; (2) liquidated damages; (3) interest; and (4) attorney's fees and costs. Plaintiffs have the burden of "proving up" their damages. *See Board of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.,* No. 04-02841 CW, 2005 WL 433462, at *2 (N.D. Cal. Feb. 24, 2005) ("Plaintiff has the burden of proving damages through testimony or written affidavit.").

### 1. Unpaid Contributions

The invoices submitted by Plaintiffs, *see* McBride Decl., Ex. D (invoices), show that Mr. Trueb and Mr. Smith were employees of J.D. Frey and that:

(1) Mr. Trueb worked for 171.5 hours in December 2000 and 74 hours in January 2001 for a total of 245.5 hours;[1]

(2) Mr. Smith worked for 120 hours in December 2000 and 64 hours in January 2001 for a total of 184 hours.

The project agreement between the union and Mr. Frey/J.D. Excavating establishes that the hourly contribution rate for an employer, as of November 1, 2000, was $10.19. *See also* 2d Supp. Br. at 3-4 (explaining why rate of $10.19 is appropriate).

Therefore, the total amount of unpaid contributions was $2,501.65 for Mr. Trueb (*i.e.*, 245.5 hours x $10.19 = $2,501.65) and $1,874.96 for Mr. Smith (*i.e.*, 184 hours x $10.19 = $1,874.96). Accordingly, the Court recommends that Plaintiffs be awarded **$4,376.61** in unpaid contributions.

### 2. Liquidated Damages

Under each Trust Agreement, a failure of an employer to make a monthly contribution would result in liquidated damages in the amount of "$35 per delinquency or 15% of the amount of the contribution or contributions due, whichever is greater." McBride Decl., Ex C at 12 (representative trust agreement). The calculation of liquidated damages is set forth as follows:

///

///

---

[1] In Plaintiffs' supplemental brief, they contend that Mr. Trueb worked for a total of 75 hours in January 2001; however, they incorrectly determined the number of hours worked from December 28, 2000, to January 3, 2001. Based on the invoice, the number of hours for that period was 32, not 33. *See* McBride Decl., Ex. D (invoices).

5

| Mr. Trueb, December 2000 | | | | |
|---|---|---|---|---|
| Trust Fund | Hourly Contribution Rate[2] | Number of Hours | Unpaid Contributions | Liquidated Damages ($35 or 15% of Unpaid Contributions, Whichever is Greater) |
| Pension | $3.25 | 171.5 hours | $557.38 | $83.61 |
| Health & Welfare | $4.10 | 171.5 hours | $703.15 | $105.47 |
| Pensioned Health & Welfare | $0.74 | 171.5 hours | $126.91 | $35.00 |
| Total | | | | **$224.08** |

| Mr. Trueb, January 2001 | | | | |
|---|---|---|---|---|
| Trust Fund | Hourly Contribution Rate | Number of Hours | Unpaid Contributions | Liquidated Damages ($35 or 15% of Unpaid Contributions, Whichever is Greater) |
| Pension | $3.25 | 74 hours | $240.50 | $36.08 |
| Health & Welfare | $4.10 | 74 hours | $303.40 | $45.51 |
| Pensioned Health & Welfare | $0.74 | 74 hours | $54.76 | $35.00 |
| Total | | | | **$116.59** |

///

///

---

[2] *See* McBride Decl., Ex. A (project agreements). The project agreement, dated December 4, 2000, specifies that, as of November 1, 2000, the hourly contribution rate for the health and welfare trust fund is $4.10; for the pension fund is $3.25; and for the pensioned health and welfare fund $0.74. Plaintiffs have not asked for liquidated damages for the vacation and holiday trust fund and the Court therefore shall not make any calculations for liquidated damages for that fund.

6

| Mr. Smith, December 2000 | | | | |
|---|---|---|---|---|
| Trust Fund | Hourly Contribution Rate | Number of Hours | Unpaid Contributions | Liquidated Damages ($35 or 15% of Unpaid Contributions, Whichever is Greater) |
| Pension | $3.25 | 152 hours | $494.00 | $74.10 |
| Health & Welfare | $4.10 | 152 hours | $623.20 | $93.48 |
| Pensioned Health & Welfare | $0.74 | 152 hours | $112.48 | $35.00 |
| Total | | | | $202.58 |

| Mr. Smith, January 2001 | | | | |
|---|---|---|---|---|
| Trust Fund | Hourly Contribution Rate | Number of Hours | Unpaid Contributions | Liquidated Damages ($35 or 15% of Unpaid Contributions, Whichever is Greater) |
| Pension | $3.25 | 32 hours | $104.00 | $35.00 |
| Health & Welfare | $4.10 | 32 hours | $131.20 | $35.00 |
| Pensioned Health & Welfare | $0.74 | 32 hours | $23.68 | $35.00 |
| | | | | $105.00 |

The liquidated damages, therefore, for Mr. Trueb's work in December 2000 and January 2001 are $340.67, and the liquidated damages for Mr. Smith $307.58. Taking into account all of these sums, the total amount of liquidated damages is $648.25. The Court recommends that Plaintiffs be awarded liquidated damages in the amount of **$648.25**.

3. <u>Interest</u>

Under each Trust Agreement, "delinquent contribution or contributions . . . shall bear interest at the rate of twelve per cent (12%) per annum until paid." McBride Decl., Ex. C at 12 (representative trust agreement). An annual interest rate of 12% translates to a monthly interest rate of 1% (*i.e.*, 12% ÷ 12 months = 1% per month).

Under the Master Agreement, the contributions for December 2000 became delinquent as of January 26, 2001, and the contributions for January 2001 became delinquent as of February 26, 2001. Therefore, as of August 26, 2005, the December 2000 contributions will have been delinquent for 4 years and 7 months (or 55 months), and the January 2001 contributions will have been delinquent for 4 years and 6 months (or 54 months).[3]

The amount of the December 2000 contributions for Mr. Trueb is $1,747.59 (*i.e.*, 171.5 hours x $10.19 = $1,747.59). The amount of the December 2000 contributions for Mr. Smith is $1,548.88 (*i.e.*, 152 hours x $10.19 = $1,548.88). Therefore, the total amount of December 2000 contributions is $3,296.47. For each month, then, there will be $32.96 in interest due (*i.e.*, $3,296.47 x 1% = $32.96). As of August 26, 2005, the interest due will be $1,812.80 (*i.e.*, $32.96 x 55 months).

The amount of the January 2001 contributions for Mr. True is $754.06 (*i.e.*, 74 hours x $10.19 = $754.06). The amount of the January 2001 contributions for Mr. Smith is $326.08 (*i.e.*, 32 hours x $10.19 = $326.08). Therefore, the total amount of January 2001 contributions is $1,080.14. For each month, then, there will be $10.80 in interest due (*i.e.*, $1,080.14 x 1% = $10.80). As of August 26, 2005, the interest due will be $583.20 (*i.e.*, $10.80 x 54 months).

---

[3] Plaintiffs have arrived at a different calculation for the interest due. In part, this is because Plaintiffs assessed interest as of August 3, 2005, not August 26, 2005. In addition, Plaintiffs calculated that, as of August 3, 2005, the December 2000 contributions were delinquent for 1,980 days – *i.e.*, approximately 5.4 years. However, 5.4 years from January 26, 2001 – the day the December 2000 contributions became delinquent – would put the parties into the year 2006.

8

Given the above calculations, as of August 26, 2005, the total interest due for both the December 2000 and January 2001 contributions will be $2,396.00 (*i.e.*, $1,812.80 + $583.20 = $2,396.00). Therefore, the Court recommends that Plaintiffs be awarded **$2,396.00** in interest as of August 26, 2005. After that date, there should be an additional $43.76 in interest due each month (*i.e.*, $32.96 + $10.80 = $43.76).

    4.    <u>Attorney's Fees and Costs</u>

Regarding attorney's fees, Plaintiffs seek to be compensated for 10.75 hours of time at a rate of $150 per hour (for a total of $1,612.50). The number of hours sought by Plaintiffs is reasonable, covering the drafting of the complaint to the preparation of the motion for default judgment. Likewise, the hourly rate sought by Plaintiffs is reasonable. While the hours were actually incurred by in-house counsel, the rate charged by outside counsel to handle similar litigation is $150 per hour. *See* Mainguy Decl. ¶ 2 ("When litigation is out-sourced by the Trust Funds, it has generally been handled by one of two law firms, either Van Bourg, Weinburg, Roger and Rosenfeld (my former employer) or Stanton, Kay and Watson. The rate charged by both of these firms to handle litigation similar to this case is $150.00 per hour."); *see also Central States, Southeast & Southwest Areas Pension Fund v. Central Cartage Co.*, 76 F.3d 114, 115-17 (7th Cir. 1996) (permitting attorney's fees under § 1132(g)(2)) to staff attorneys of pension fund); *Central States, Southeast & Southwest Areas Pension Fund v. Tank Transport, Inc.*, No. 90 C 5524, 1992 U.S. Dist. LEXIS 18609, at *20 (N.D. Ill. Dec. 8, 1992) (permitting award of fees under § 1132(g)(2) even though based on work of in-house counsel).

As for costs, Plaintiffs seek to be compensated for their filing fee ($150) and their fee for service of process on Mr. Frey ($99). *See id.* ¶ 5 & Ex. A (receipts). In *Agredano v. Mutual of Omaha Cos.*, 75 F.3d 541 (9th Cir. 1996), the Ninth Circuit held that the allowance for costs under § 1132(g)(1) "'empowers courts to award only the types of 'costs' allowed by 28 U.S.C. § 1920, and only in the amounts allowed by section 1920 itself, by 28 U.S.C. § 1821 [providing for witness fees]

9

or by similar such provisions." *Id.* at 544. Given this was the Ninth Circuit's approach for § 1132(g)(1), it is reasonable to apply the same approach to § 1132(g)(2), which uses the same statutory language as § 1132(g)(1) (*i.e.*, reasonable attorney's fees and costs"). Plaintiffs, therefore, should be able to get as costs their filing fee and fee for service of process. *See* 28 U.S.C. § 1920; *see also* Civ. L.R. 54-3(a)(1) ("The Clerk's filing fee is allowable if paid by the claimant."); Civ. L.R. 54-3(a)(2) ("Fees for service of process by someone other than the marshal acting pursuant to FRCivP 4(c), are allowable to the extent reasonably required and actually incurred.").

Accordingly, the Court recommends attorney's fees in the amount of $1,612.50 and costs in the amount of $249, for a total of **$1,861.50**.

### III. CONCLUSION

For the foregoing reasons, the Court recommends that Plaintiffs be granted default judgment and awarded damages as follows: (1) unpaid contributions in the amount of **$4,376.61**; (2) liquidated damages in the amount of **$648.25**; (3) interest as of August 26, 2005, in the amount of **$2,396.00**; and (4) attorney's fees and costs in the amount of **$1,861.50**.

Any party may file objections to this report and recommendation with the district judge within ten days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Civil L.R. 72-3.

IT IS SO ORDERED.

Dated: August 29, 2005

_____
EDWARD M. CHEN
United States Magistrate Judge

10